## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

ROBERT TRINKLE               *

                            *

       v.               *        Case No. CCB-11-3316

                            *

UNITED STATES OF AMERICA     *

\*\*\*\*\*\*

## MEMORANDUM

Plaintiff Robert Trinkle ("Mr. Trinkle" or "Plaintiff") brings this action under the Federal Tort Claims Act ("FTCA") against the United States of America ("Defendant"), claiming that medical personnel at the Department of Veterans Affairs ("VA") Medical Center in Baltimore, Maryland ("VAMC") committed malpractice in treating him. Pending is Defendant's Motion to Dismiss for Lack of Subject Matter Jurisdiction. ECF No. 10. The issues have been fully briefed and no oral argument is necessary. See Local Rule 105.6 (D. Md. 2011). For the reasons stated below, Defendant's motion to dismiss will be granted.

## BACKGROUND

On November 29, 2007, Mr. Trinkle sought evaluation from a neurologist for his worsening bilateral foot pain. Def. Mot. Exh. 2.[1] At that appointment, the neurologist determined that Mr. Trinkle's "[n]europathy may be worsened by amiodorone that pt is taking for [atrial fibrillation]." *Id.* The neurologist further stated that he would "recommend to cardiologist to consider discontinuing amiodorone because can exacerbate neuropathy." *Id.*

---

[1] The court may consider evidence outside the pleadings in adjudicating a Rule 12(b)(1) motion. *See Evans v. B.F. Perkins Co.,* 166 F.3d 642, 647 (4th Cir. 1999); *see also Khoury v. Meserve*, 268 F.Supp. 2d 600, 606 (D. Md. 2003) ("the court may look beyond the pleadings and the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists.").

Finally, the neurologist stated that he "[w]ill send pt a copy of this clinic note so he can provide a copy to his [primary care provider] who is outside of the VA system." *Id.*

On December 4, 2007, the attending physician from the November 29, 2007 appointment prepared an addendum indicating that Mr. Trinkle's "major risk factor is his long standing amiodarone. We would like his cardiologist to determine where this medication is still required for his arrhymia [sic]." *Id.* There is no evidence that Mr. Trinkle received a copy of that addendum. On March 3, 2009, a neurologist at the Walter Reed Army Medical Center evaluated Mr. Trinkle. ECF No. 13-3. That neurologist noted, "He has been on amiodarone for about 12.5 years now, for his [atrial fibrillation]. After the EMG done here we suggested it be discontinued. His cardiologist took swift action." *Id.* The neurologist further opined, "[t]he best guess is that his neuropathy may relate to longterm intake of amiodarone, but I feel it would not harm to start him on B12." *Id.*

The VA received Plaintiff's administrative claim on December 4, 2009. Compl. at 2. Plaintiff's VA claim alleged:

> In November 2007 I was seen by Neurology Service at the Baltimore VA due to progressive bilateral foot pain that had been worsening over the past 4-5 years. The neurologist indicated that she would be recommending that the cardiologist consider discontinuing amiodarone as it could exacerbate neuropathy. This did not happen and despite worsening neuropathy of my lower extremities I remained on amiodarone until 5 months ago when my physician at Walter Reed Medical Center determined that my peripheral neuropathy was most likely secondary to prolonged use of amiodarone.

Def. Mot. Exh. 3. On November 18, 2011, Plaintiff filed his medical malpractice complaint in this Court. ECF No. 1.

## STANDARD OF REVIEW

The United States is entitled to sovereign immunity and cannot be sued without its consent. *See FDIC v. Meyer*, 510 U.S. 471, 475 (1994). Accordingly, this court's jurisdiction

over claims against the United States is limited to the terms of the government's consent to be sued.  *See id.; Lehman v. Nakshian*, 453 U.S. 156, 160 (1981).  The FTCA provides a limited waiver of sovereign immunity for torts committed by agents or employees of the United States acting within the scope of their employment.  *See Williams v. United States*, 50 F.3d 299, 305 (4th Cir.1995).  The FTCA, as a waiver of immunity, is "strictly construed, and all ambiguities are resolved in favor of the sovereign." *Robb v. United States*, 80 F.3d 884, 887 (4th Cir.1996).

Where a motion to dismiss pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure is filed in an FTCA case, Plaintiff bears the burden of proving that subject matter jurisdiction exists because "[t]he party who sues the United States bears the burden of pointing to . . . an unequivocal waiver of immunity." *Williams*, 50 F.3d at 304 (alterations in original) (citation and internal quotation marks omitted).

**ARGUMENT**

Defendant asserts that this case should be dismissed for lack of subject matter jurisdiction because Plaintiff failed to exhaust his administrative remedies, as required by 28 U.S.C. § 2401(b), prior to filing suit in this Court.  The FTCA permits a limited waiver of sovereign immunity for an individual to sue the United States for personal injury caused by the alleged negligence or wrongful conduct of certain of its employees.  *See* 28 U.S.C. § 1346(b).  To invoke that limited waiver of immunity, the individual must first exhaust required administrative remedies before filing suit in federal court. *See McNeil v. United States*, 508 U.S. 106, 113 (1993) ("The FTCA bars claimants from bringing suit in federal court until they have exhausted their administrative remedies."); *see also Messino v. McBride*, 174 F.Supp.2d 397, 399 (D. Md. 2001) ("[A] plaintiff must have exhausted administrative remedies **prior** to filing suit, or the case is subject to dismissal.") (emphasis in original).  The FTCA requires presentation of an

administrative claim to the "appropriate federal agency" within two years after the claim accrues or else "[a] tort claim against the United States shall be forever barred."  28 U.S.C. § 2401(b). The administrative exhaustion requirement "is jurisdictional and may not be waived." *Kokotis v. United States Postal Service*, 223 F.3d 275, 278 (4th Cir. 2000) (citing *Henderson v. United States*, 785 F.2d 121, 123 (4th Cir. 1986)).   Although a strict interpretation of § 2401(b) "often works a substantial hardship on plaintiffs and may have a harsh impact on a party innocent of any impropriety," courts must avoid "rewriting the FTCA to allow broad, open-ended exceptions." *Gould v. United States Dep't of Health & Human Servs.*, 905 F.2d 738, 747 (4th Cir. 1990) (en banc), *cert. denied*, 498 U.S. 1025 (1991).

In this case, the parties agree that Plaintiff filed his administrative claim with the VA on December 4, 2009.  Pl. Opp. at 9; *see* also 28 C.F.R. § 14.2(b) ("A claim shall be presented as required by 28 U.S.C. 2401(b) as of the date it is received by the appropriate agency."). However, the parties dispute when Plaintiff's claim accrued, which governs whether or not his claim was timely under the FTCA.   Defendant contends that Plaintiff's claim accrued on November 29, 2007, when Plaintiff first learned of his injury and its possible cause.  Plaintiff submits that he did not learn the actual cause of his neuropathy until March, 2009.  Governing case law establishes that Defendant's position is correct.

In FTCA cases, federal law governs the limitations period and the date when a claim accrues.  *See, e.g., Miller v. United States,* 932 F.2d 301, 303 (4th Cir. 1991) ("State law determines whether there is an underlying cause of action; but federal law defines the limitations period and determines when that cause of action accrued.")  Under 28 U.S.C. § 2401(b), a "cause of action accrues under the FTCA when the plaintiff knows, or in the exercise of reasonable diligence should have known, that he is injured and of the cause of the injury." *Muth v. United*

*States,* 1 F.3d 246, 250 (4th Cir. 1993) (citing *United States v. Kubrick*, 444 U.S. 111, 120, 100 S.Ct. 352 (1979); *Gould*, 905 F.2d at 742.  Knowing the cause of the injury does not require knowing the precise medical reason for the injury.  *Kerstetter v. United States,* 57 F.3d 362, 364 (4th Cir. 1995).

Several prior cases illustrate the standard for determining when a claim has accrued.  In 1968, physicians at a VA hospital treated a veteran, William Kubrick, with an antibiotic, neomycin.  *Kubrick*, 444 U.S. at 113.  Several weeks later, Mr. Kubrick suffered hearing loss.  *Id.* at 113-14.  In January 1969, a physician informed Mr. Kubrick "that it was highly possible that the hearing loss was the result of the neomycin treatment."  *Id.* at 114.  In 1971, another physician told Mr. Kubrick that "the neomycin had caused his injury and should not have been administered."  *Id.*  Mr. Kubrick filed suit under the FTCA in 1972.  *Id.* at 115.

The Supreme Court determined that Mr. Kubrick's claim had accrued in January, 1969, stating:

> Kubrick need only have made inquiry among doctors with average training and experience in such matters to have discovered that he probably had a good cause of action.  The difficulty is that it does not appear that Kubrick ever made any inquiry, although meanwhile he had consulted several specialists about his loss of hearing and had been in possession of all the facts about the cause of his injury since January 1969.  Furthermore, there is no reason to doubt that Dr. Soma, who in 1971 volunteered his opinion that Kubrick's treatment had been improper, would have had the same opinion had the plaintiff sought his judgment in 1969.

*Id* at 122-123.  In determining that a plaintiff has a duty of due diligence accruing upon discovery of the relevant facts about injury, the Supreme Court noted, "[t]o excuse him from promptly [seeking advice in the medical and legal community] by postponing the accrual of his claim would undermine the purpose of the limitations statute, which is to require the reasonably diligent presentation of tort claims against the Government."  *Id.* at 123.

The Fourth Circuit applied the *Kubrick* rule in *Kerstetter,* 57 F.3d 362.  The Kerstetters sought recovery under the FTCA on behalf of their minor child for injuries suffered during surgery in early June 1987.  *Id.*  at 363.  In late June or early July of 1987, doctors informed the Kerstetters that their child's natural kidneys would never resume functioning.  *Id.*  Their child received two kidney transplants, in October 1987, and February 1991.  *Id.*  The Kerstetters filed their administrative claim in August 1992.  *Id.*  The Kerstetters argued that "they did not become aware of the cause of the injury until September 1990" when a doctor informed them that the "renal failure was due to damage to the blood vessels serving the kidney."  *Id.* at 364.  In rejecting that argument, the Fourth Circuit noted that:

> [T]his issue boils down to a pure question of law: what does "cause" mean for purposes of the FTCA.  The Kerstetters' argument is premised on their construction of the word to refer to the *precise medical reason* for the injury.  In contrast, the Government and the district court read the term at a greater level of generality – one that would require, in this case, only knowledge that *the operation* caused the injury.  The Supreme Court's decision in *Kubrick* clearly reveals that the government's interpretation is the correct one.

*Id.* at 364-365.

Similarly, in *Hahn v. United States,* 313 Fed. Appx. 582, 2008 WL 4809240 (4th Cir. 2008), a veteran, Bertram Hahn, received treatment for Guillain-Barré syndrome ("GBS") in May 2000, at a military hospital.[2]  Unbeknownst to Mr. Hahn, he was supposed to receive intravenous treatment (IVIg) for five days.  *Id.* at 583.  He only received two days of the IVIg treatment.  *Id.*  After his discharge from the hospital in June, 2001, he continued to suffer residual weakness in his limbs.  *Id.*  He promptly sought consultations with several physicians.  *Id.* at 584.  "According to Hahn, these doctors asked him whether he had been given any subsequent IVIg treatments or whether he had been given a plasma exchange following the

---

[2] Unpublished cases are not binding precedent and are cited only for their reasoning.

initial IVIg treatment.  Hahn answered these questions in the negative, after which the doctors either responded by saying "Oh?" or remained completely silent."  *Id.*  In August 2003, Mr. Hahn met with a new physician and provided the new physician with his medical records from his original treatment.  *Id.*  That doctor advised Mr. Hahn that the failure to administer the full five days of IVIg treatment may have caused his residual weakness.  *Id.*  Mr. Hahn filed an administrative claim in February 2004.  *Id.*

Mr. Hahn argued that none of the physicians he consulted in 2001 specifically informed him that his residual weakness was caused by the incomplete administration of the IVIg treatment.  *Id.* at 586.  The Fourth Circuit determined that, "Hahn's argument is flawed because it assumes that a claimant cannot be charged with knowing the cause of an injury until the claimant has been actually informed of its specific cause."  *Id.* at 586.  The Fourth Circuit described an affirmative duty to investigate once a patient has notice of a possible cause.  *See id.* ("A reasonable person exercising due diligence under the same circumstances would have provided the doctors with his medical records and asked the doctors whether some aspect of his treatment might have caused his incomplete recovery.")  Finally, the Fourth Circuit noted, "If this Court were to adopt Hahn's interpretation of the *Kubrick* standard, it would effectively eliminate the requirement that a claimant exercise due diligence in ascertaining the existence of an injury and its likely cause."  *Id.* (citations omitted).

In this case, Mr. Trinkle's level of knowledge is comparable to the knowledge possessed by the plaintiffs in *Hahn, Kerstetter,* and *Kubrick.*  Mr. Trinkle had notice of his injury and the possible source of his symptoms at his evaluation with the neurologist in November 2007.  The fact that the neurologist did not use the word "cause" in describing the relationship between amiodarone and Mr. Trinkle's neuropathy is not dispositive.  In fact, it is directly analogous to

the argument rejected by the Supreme Court in *Kubrick*.  Mr. Trinkle's neurologist advised him of a likely connection between the medication and his symptoms, and recommended that his cardiologist consider discontinuing the amiodorone.  The evidence does not reflect that Mr. Trinkle took any steps, in the intervening months between November 2007 and March 2009, to investigate that connection.  Although Mr. Trinkle may not have known the precise medical reason for his neuropathy after his November 2007 appointment, the *Kerstetter* court has made clear that such knowledge is not required for a claim to accrue.  As of November 29, 2007, Mr. Trinkle was armed with sufficient facts regarding his injury and its likely derivation to trigger both the statute of limitations and his duty to use due diligence to investigate a potential claim.  Because his claim accrued in November 2007, Mr. Trinkle's December 2009 administrative complaint was untimely.  He has therefore failed to fulfill the prerequisites for an FTCA claim.

**CONCLUSION**

For these reasons, the court will grant Defendant's motion to dismiss for lack of subject matter jurisdiction.  A separate order follows.


Dated:  May 31, 2012                                    _____ /S/_____
                                                        Catherine C. Blake
                                                        United States District Judge